**BRIAN C. LOWNEY**
**BENJAMIN D. HARGROVE**
**Assistant U.S. Attorneys**
**U.S. Attorney's Office**
**P.O. Box 8329**
**Missoula, MT 59807**
**101 E. Front St., Suite 401**
**Missoula, MT 59802**
**Phone:   (406) 542-8851**
**FAX:      (406) 542-1476**
**E-mail:  Brian.Lowney@usdoj.gov**
**            Benjamin.Hargrove@usdoj.gov**

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> **Plaintiff,** <br><br> **vs.** <br><br> **REMBRANT CARLOS KEMP,** <br><br> **Defendant.** | **CR 22-86-GF-BMM-02** <br><br><br> **UNITED STATES' TRIAL BRIEF** |

**INTRODUCTION**

On October 20, 2022, a Grand Jury in the District of Montana charged

Kemp by indictment with two drug crimes.  Count 1 charges him with conspiracy

to distribute and possess with intent to distribute 5 grams or more of actual

1

methamphetamine and a substance containing a detectable amount of fentanyl, all

in violation of 21 U.S.C. § 846.  Count 2 charges him with possessing with the

intent to distribute 5 grams or more of actual methamphetamine and a substance

containing a detectable amount of fentanyl, and aiding and abetting the same, in

violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Kemp pleaded not guilty.

His trial is scheduled to begin on September 11, 2023. (Doc. 75.)

## ELEMENTS

In order for the defendant to be found guilty of the charges contained in the

indictment, the government must prove each of the following elements beyond a

reasonable doubt.

Count 1:  Conspiracy to Possess with Intent to Distribute and to Distribute Methamphetamine:[1]

- First, beginning in or about December 2020, and continuing through at least January 2021, there was an agreement between two or more persons to possess with intent to distribute and to distribute methamphetamine and fentanyl; and

- Second, the defendants joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

Count 2:  Possession with Intent to Distribute Methamphetamine and Fentanyl:[2]

- First, the defendant knowingly possessed methamphetamine and fentanyl; and

---

[1] Model Crim. Jury Instr. 9th Cir. 12.5 (8/2023).
[2] Model Crim. Jury Instr. 9th Cir. 12.1 (8/2023).

- Second, the defendant possessed it with the intent to distribute it to another person.

To "possess with the intent to distribute" means to possess with intent to deliver or transfer possession of a controlled substance to another person, with or without any financial interest in the transaction.[3]

It does not matter whether the defendants knew that the substances were methamphetamine and fentanyl.  It is sufficient that the defendant knew that it was some kind of a federally controlled substance.[4]

While quantity and drug type are not elements of controlled substance offenses, a jury must determine those facts before a sentencing enhancement based upon drug type or quantity can be applied.[5]

## PLEA CONSIDERATIONS

Although the defendant is proceeding to trial, a plea offer was extended to him in writing, that in the government's view, would have been more beneficial to the defendant than a conviction following trial. *See Missouri v. Frye*, 132 S. Ct. 1399 (2012).

## LENGTH OF TRIAL AND WITNESSES

The United States anticipates calling approximately 11 witnesses.  Its

---

[3] *Id*.
[4] *Id*.
[5] Model Crim. Jury Instr. 9th Cir. 12.2 (8/2023)

case-in-chief should take approximately two days after jury selection, subject

to cross-examination. The United States may call additional rebuttal witnesses

after Kemp's case.  Approximately seven of the witnesses that the United

States anticipates calling are in law enforcement.

The United States anticipates calling Agent CJ Reichelt twice during its

case-in-chief.  In the first instance he is expected to testify as to investigation

leading up to the stop and arrest of the defendant.  The second time he is

called, Agent Reichelt is expected to testify as to his examinations of the

defendant's cell phone extraction and electronic social media records obtained

via search warrant.

The United States is unaware how long the defense case will last.

## ANTICIPATED PROOF

This is a companion case to *United States v. Chantel Azure*, CR 22-21-GF-

BMM (D. Mont. 2022).  On January 11, 2021, law enforcement learned from a

confidential source about a female and male distributing fentanyl in Havre,

Montana. Based on information provided by the source and their review of public

Facebook profiles, law enforcement determined that the female was Chantel Azure

and the male was Kemp. On January 13, 2021, the source successfully conducted a

controlled buy of fentanyl pills from Azure. During the sale, law enforcement

observed Azure arrive in a vehicle registered to her with two passengers inside.

Both passengers were black males. Agents saw Azure get out of her car, get into

the source's vehicle where the sale occurred, and return to her vehicle with the two

men still inside.

Law enforcement continued to surveil the vehicle and stopped it later that

day with Azure and her two occupants inside. Azure was identified as the driver.

Kemp was located in the front passenger seat and his co-defendant, Martaveon

Scott, was in the back seat. Azure and Kemp were arrested on warrants and Scott

was arrested for providing a false name. Kemp was found with 4.32 grams of

actual methamphetamine and a digital scale. Scott was found with 28.43 grams of

actual methamphetamine and 100 pills of fentanyl, which weighed approximately

9.6 grams. An additional 2.9 grams of actual meth was found in the trunk of the

vehicle along with a .22 caliber AR-15 style rifle. Additionally, $1,378 was found

with Kemp and Scott in the car, including the $800 cash used by the source for the

controlled buy.

The methamphetamine and fentanyl recovered in this case was sent to the

DEA Western Laboratory for testing.  The lab confirmed that the items contained

actual methamphetamine and fentanyl in the weights indicated above.[6]

Facebook records showed communication between Azure and Scott since

December 2020 that was indicative of drug trafficking. Similar messages between

---

[6] The parties have stipulated to this information. (Doc. 56.)

Kemp and Azure, related to methamphetamine sales and sent in January 2021, were found on Kemp's phone as well.

The United States anticipates that the Court will hear testimony from witnesses establishing that Kemp, Scott, and Azure were working together to transport and sell methamphetamine and fentanyl in Billings and Havre.

## ANTICIPATED EXHIBITS

The United States filed its exhibit list separately. The list includes physical evidence such as controlled substances, a digital scale, a firearm, and U.S. currency. This list also includes photographs, electronic messages, audio and video recordings, and other digital evidence.

## ANTICIPATED WITNESSES

1.   Adam Awtrey, Tri-Agency Task Force

2.   Chantel Azure

3.   William Brew, Task Force Officer, DEA

4.   Jordan Chroniger, Havre Police Department

5.   Chelsea Donaldson

6.   Ruth Ann Kocherhans

7.   Chad Minnick, Tri-Agency Task Force

8.   Brandon Olson, formerly Havre Police Department

9.   Ryan Pearson, Havre Police Department

10.    C.J. Reichelt, Tri-Agency Task Force

11.    Martaveon Scott

## STIPULATIONS

The parties have stipulated to facts in this case via two separate filings.

(Docs. 56 and 74.) Stipulation #1 relates to the chain of custody and admissibility

of the drug evidence in this case, specifically Government's Exhibits 1-5. (Doc.

56.) Stipulation #2 relates to the forensic drug analyses conducted by the DEA

Western Laboratory in this case and the conclusions reached by those chemists

regarding Government's Exhibits 1-5. (Doc. 56.) Stipulation #3 relates to the chain

of custody and digital analysis of Kemp's iPhone, which was recovered and

analyzed by law enforcement during the investigation. (Doc. 74.)

## ANTICIPATED LEGAL ISSUES

I.      **The Defendant's statements are non-hearsay and admissible into evidence if offered by the United States.**

Rule 801(d)(2) defines a party opponent's statement as non-hearsay,

meaning it can be admitted as substantive evidence.  Fed. R. Evid. 801(d)(2).  This

evidence, which is any statement made by a defendant, is admissible as a result of

the "adversary system." *Advisory Committee Notes*, Fed. R. 801(d)(2).  The party-

opponent rule has enjoyed the "freedom" from the strict requirements that other

rules might require, such as expert testimony.  The courts should instead give

"generous treatment" of such statements and admit them into evidence.  *Id.*

The United States anticipates introducing several electronic communications involving Kemp.  First, electronic communications *from* Kemp are admissible under Fed. R. Evid. 801(d)(2)(A).[7] Further, electronic communications *from* witnesses to Kemp are also admissible non-hearsay evidence or hearsay that falls under many exceptions.[8]

First, the statements from the witnesses who will be testifying at trial are admissible as non-hearsay because they are not being offered for the truth of the matter asserted but rather to provide context.  *See, e.g., United States v. Burt*, 495 F.3d 733, 738-39 (7th Cir. 2007) (in prosecution for sexual exploitation of a minor, distributing child pornography, and possession of child pornography, in Yahoo!

---

[7] *See, e.g., United States v. Burt*, 495 F.3d 733, 738 (7th Cir. 2007) (on Yahoo! chat communication involving the defendant and a third party found on the defendant's computer, "[t]hose portions of the chat which represent Burt's writings were properly admissible as admissions by a party opponent under Fed. R. Evid. 801(d)(2)"), *cert. denied*, 552 U.S. 1063 (2007); *United States v. Siddiqui*, 235 F.3d 1318, 1322 (11th Cir. 2000) (noting the e-mails "sent by Siddiqui constitute admissions of a party pursuant to Fed. R. Evid. 801(d)(2)(A)"), *cert. denied*, 533 U.S. 940 (2001); *United States v. Safavian*, 435 F.Supp.2d 36, 43 (D.D.C. 2006) ("The [e-mail] statements attributed directly to Mr. Safavian come in as admissions by a party opponent under Rule 801(d)(2)(A) of the Federal Rules of Evidence."); *In re Homestore.com, Inc. Securities Litigation*, 347 F.Supp.2d 769, 781 (C.D.C.A. 2004) (in civil securities action, "e-mails written by a party are admissible as non-hearsay under Fed. R. Evid. 801(d)(2)").

[8] The United States intends to introduce most of the electronic communications between the Defendant and the testifying witnesses through pdf documents that include the text the witnesses will be testifying to.  The documents reflect written, verbatim statements of the Defendant and witness and have been provided to defense counsel.

chat communication involving the defendant and a third party found on the defendant's computer, the portion from the third party was admissible as non-hearsay and provided context to the conversation) *cert. denied*, 552 U.S. 1063 (2007); *United States v. Dupre*, 462 F.3d 131, 136-37 (2d Cir. 2006) (in wire fraud prosecution, e-mails from investors demanding information about defendant's fraudulent scheme were not hearsay when offered not for truth of the assertion that the scheme was fraudulent, but to provide context for the defendant's message sent in response and to rebut defendant's argument that she did not know scheme was fraudulent; no Confrontation Clause issues arose since the statements were offered for a non-hearsay purpose), *cert. denied*, 127 S. Ct. 1026 (2007); *United States v. Safavian*, 435 F.Supp.2d 36, 44 (D.D.C. 2006) (admitting some e-mails which "provide context for the defendant's statements and are not introduced for their truth").

Moreover, to the extent they are determined to be hearsay – which they are not – communications *from* a testifying witness to Kemp likely fall under several hearsay exceptions.  These include:

- Present Sense Impression.  Fed. R. Evid. 803(1)

- Excited Utterance.  Fed. R. Evid. 803(2)

- Existing Mental, Emotional, or Physical Condition.  Fed. R. Evid. 803(3)

However, statements of the defendant that the defense attempts to elicit through other witnesses or documents are improper. A defendant may avoid this problem by testifying at trial, should he elect to do so, and certainly cannot be compelled to testify under the Fifth Amendment. But the plain language of the rule notes that it is a statement offered against a party, not for a party. Fed. R. Evid. 801(d)(2)(A)(2).

The defendant is not permitted to include portions of these communications including "his own exculpatory statements" that are inadmissible hearsay and not required to be included under the rule of completeness.  Courts have consistently echoed this sentiment.  *See, e.g., United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) ("Admissions by a party-opponent are not considered hearsay and therefore can be admitted against that party.  Fed. R. Evid. 801(d)(2)); *United States v. Palow*, 777 F.2d 52, 56 (1st Cir. 1985) ("The requirement of Rule 801(d)(2)(A) that an admission be offered against a party is designed to exclude the introduction of self-serving statements by the party making them.") (emphasis added) (cited favorably in *Fernandez*), *cert. denied*, 475 U.S. 1052 (1986).

As one court noted, the defendant could not introduce his inculpatory or exculpatory statements made to an agent under Rule 801(d)(2), otherwise "parties could effectuate an end-run around the adversarial process by, in effect, testifying without swearing an oath, facing cross-examination, or being subjected to

10

first-hand scrutiny by the jury." *United States v. McDaniel*, 398 F.3d 540, 544 (6th

Cir. 2005).

Indeed, the Ninth Circuit addressed this issue in *Ortega*, a drug and firearms

case where the district court precluded the defendant from "eliciting his own

exculpatory statements, which were made within a broader, inculpatory narrative."

In the excluded oral statements, the defendant claimed that the guns and drugs

found in his residence belonged to someone else. *Ortega*, 203 F.3d at 681-82. On

appeal, the defendant argued that exclusion of the statements violated the rule of

completeness, the Confrontation Clause, Fed. R. Evid. 801(d)(1) (exception for

recent fabrication), and Fed. R. Evid. 807 (residual exception). *Id.* at 682. In

affirming the exclusion of the defendant's "non-self-inculpatory statements," the

Ninth Circuit explained:

> First, Ortega's non-self-inculpatory statements are inadmissible even
> if they were made contemporaneously with other self-inculpatory
> statements. The self-inculpatory statements, when offered by the
> government, are admissions by a party-opponent and are therefore
> not hearsay. . .but the non-self-inculpatory statements are
> inadmissible hearsay. . . .
>
> Second, the rule of completeness. . .applies only to written and
> recorded statements. . . . Even if the rule of completeness did apply,
> exclusion of Ortega's exculpatory statements was proper because
> these statements would still have constituted inadmissible hearsay.[9]

---

[9] *Ortega*, 203 F.3d at 682 (citations omitted); *see also United States v. Collicott*, 92
F.3d 973, 983 (9th Cir. 1996) ("'Rule 106 does not compel admission of otherwise
inadmissible hearsay evidence'") (citation omitted); *United States v. Dorrell*, 758
F.2d 427, 434-35 (9th Cir. 1985) (no violation of rule of completeness where

*United States v. Ortega*, 203 F.3d 675, 682 (9th Cir. 2000).

As such, unless Kemp elects to testify, he should not be permitted to elicit testimony from witnesses or other evidence.

**II.     Other crimes, wrongs, or acts evidence (Fed. R. Evid. 404(b)).**

As a general rule, evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.  Fed. R. Evid. 404(b)(1).  However, such evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident, provided, in a criminal case, the prosecution provides reasonable notice of its intent to use such evidence.  Fed. R. Evid. 404(b)(2).

At this time, the United States does not know of any other crimes, wrongs, or acts evidence that it intends to use during its case-in-chief.  However, the United States is continuing to interview potential witnesses for trial and it may be that those interviews uncover relevant Rule 404(b) evidence, or *Jencks* material.  If that occurs, the United States will provide notice and produce the material as soon as possible.  The potential witnesses may also have *Giglio* information.  The United

edited statement does not distort meaning of passage).

States will also produce any *Giglio* information as soon as we receive notice that

the witness will agree to be a witness at the trial.

Respectfully submitted this 5th day of September, 2023.

JESSE A. LASLOVICH
United States Attorney


/s/ *Brian C. Lowney*
BRIAN C. LOWNEY
Assistant U.S. Attorney

/s/ *Benjamin D. Hargrove*
BENJAMIN D. HARGROVE
Assistant U.S. Attorney

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Local Rule CR 47.2(c).  The

brief contains approximately 2,782 words.

<div style="margin-left:50%">

JESSE A. LASLOVICH
United States Attorney

*/s/ Brian C. Lowney*
Assistant U.S. Attorney
Attorney for Plaintiff

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2023, a copy of the foregoing

document was served on the following persons by the following means:

 (1,2) CM/ECF
 ( ) Hand Delivery
 ( ) U.S. Mail
 ( ) Overnight Delivery Service
 ( ) Fax
 ( ) E Mail

1. Clerk, U.S. District Court

2. Benjamin M. Darrow
  Darrow Law, PLLC
  415 N. Higgins, Ste. 2
  P.O. Box 7238
  Missoula, MT 59807
  Attorney for Defendant

*/s/ Brian C. Lowney*
Assistant U.S. Attorney
Attorney for Plaintiff